UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CRYSTAL J. WOODARD, Individually, and as the Executrix of the Estate of NICKIE F. WOODARD, (Deceased),
        Plaintiffs,

-against-

UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, AND ALBANY STRATTON VETERANS AFFAIRS MEDICAL CENTER,

        Defendants.

**VERIFIED COMPLAINT AND JURY TRIAL DEMAND**

Civil Case No.: 1:17-CV-1097 (TJM/DJS)

---

Plaintiffs CRYSTAL J. WOODARD, Individually, and as the Executrix of the Estate of NICKIE F. WOODARD, (Deceased), as and for their Verified Complaint, by and through their attorneys, Conway & Kirby, PLLC, complaining against the Defendants, United States of America, United States Department of Veterans Affairs, and Albany Stratton Veterans Affairs Medical Center, state as follows:

## PREDICATE

1. This is an action against Defendant United States of America, Defendant United States Department of Veterans Affairs, and Defendant Albany Stratton Veterans Affairs Medical Center under the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*) and 28 U.S.C. § 1346(b)(1).

2. This complaint alleges that Defendants committed medical malpractice, as more fully described herein, during their medical care and treatment of Decedent Nickie F.

Woodard, causing severe and permanent injuries, pain and suffering, damages, loss, and ultimately, death.

## JURISDICTION

3. The claims herein are brought against Defendants pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671, et seq.) and 28 U.S.C. § 1346(b)(1), for money damages as compensation for personal injuries, pain and suffering, damages, and loss caused by the medical malpractice of Defendants.

4. This suit has been timely filed and Plaintiffs have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act. Plaintiffs presented their claim to the Department of Veterans Affairs by hand delivering to them a completed Standard Form 95 with Addendum attached thereto on or about September 30, 2015, together with serving a copy by certified mail – return receipt requested to New York VA Regional Office at 245 W. Houston Street, New York, New York 10014. Plaintiffs' Standard Form 95, with attached exhibits, is annexed hereto as *Exhibit "A"*. Thereafter, on or about October 3, 2016, Plaintiffs attempted to hand deliver the Amended Standard Form 95 to the US Department of Veterans Affairs, located at 113 Holland Avenue, Albany, New York, but was unable to do so being that there was no one available to accept the delivery. However, on or about October 3, 2016, Plaintiffs also served a completed Amended Standard Form 95 by certified mail – return receipt requested on the New York VA Regional Office (same address as noted above). Thereafter, Plaintiffs also served a completed Amended Standard

2

Form 95 by Federal Express, on the US Department of Veterans Affairs, 113 Holland Avenue, Albany, New York, on or about October 27, 2016. Attached hereto is a copy of the Amended Standard Form 95, with attached exhibits, as *Exhibit "B"*.

5. Plaintiffs are now filing this Complaint pursuant to 28 U.S.C. § 2401(b) and 28 U.S.C. 2675(a) because Defendants have failed to make a final disposition of Plaintiffs' claim within six months after the last filing of the Amended Standard Form 95, with attachments, on or about October 27, 2016. Plaintiffs are deeming this failure a final denial of their claim.

## PERSONAL JURISDICTION, AND VENUE

6. At all times mentioned herein, Plaintiff Crystal Woodard and Decedent Nickie F. Woodard were residents of the County of Warren, State of New York.

7. Nickie F. Woodard died on October 3, 2015.

8. At all times mentioned herein until his date of death, Plaintiff Crystal Woodard was married to Decedent Nickie F. Woodard.

9. Plaintiff Crystal Woodard continues to reside in the County of Warren, State of New York, at the present time.

10. Plaintiff, Crystal J. Woodard, was appointed Executrix of the Estate of Nickie F. Woodard by Letters Testamentary with Limitations issued on May 25, 2016 by the Warren County Surrogate's Court, in the County of Warren, State of New York. A copy of the Letters of Administration is annexed hereto as *Exhibit "C"*.

11. At all times mentioned herein, upon information and belief, Defendant United States Department of Veterans Affairs was and still is an agency of Defendant United States of America, formed under the laws of Defendant United States of America and doing business in the State of New York.

12. Upon information and belief, Defendant Albany Stratton Veterans Affairs Medical Center operated a health care facility located at 113 Holland Avenue, Albany, New York 12208.

13. Upon information and belief, Defendant United States of America operated, maintained and/or controlled the medical facility known as Defendant Albany Stratton Veterans Affairs Medical Center located at 113 Holland Avenue, Albany, New York 12208.

14. Upon information and belief, Defendant United States Department of Veterans Affairs operated, maintained and/or controlled the medical facility known as Defendant Albany Stratton Veterans Affairs Medical Center located at 113 Holland Avenue, Albany, New York 12208.

15. At all times mentioned herein, Defendant United States of America, through its agency, Defendant United States Department of Veterans Affairs, operated, maintained, and/or controlled Defendant Albany Stratton Veterans Affairs Medical Center located at 113 Holland Avenue, Albany, New York 12208, in the County of Albany, State of New York.

16. Jurisdiction is proper under 28 U.S.C. § 1346(b)(1).

17. Venue is predicated upon 28 U.S.C. § 1391(b) and (e) since the Defendants are residents of, have agents, and/or transact their affairs in the Northern District of New

York, and the acts, omissions, and occurrences in furtherance of the claims alleged herein arose in the Northern District of New York, and because the ends of justice require that other parties residing in other districts be brought before this Court.

## FACTUAL ALLEGATIONS

18. On November 4, 2013, Mr. Woodard was ordered to undergo a preoperative workup prior to his scheduled left knee surgery at Defendants.

19. As a part of said workup, Mr. Woodward underwent a chest x-ray at Defendants medical facility. This x-ray revealed, "1.2 cm ovoid opacity medially within the right upper lung. Further evaluation with CT is suggested to exclude the underlying pulmonary mass."

20. Mr. Woodard was never informed of this finding nor was he advised to follow up.

21. It was not until he was seen at his annual physical exam with Doris Schweickert, NP, at Defendants, on or about February 26, 2014 that he learned of the findings of the chest x-ray taken nearly four months earlier.

22. Again, Mr. Woodard had to wait several months for any follow up treatment to the alarming x-ray findings.

23. Finally, nearly three months later, on May 18, 2014, a follow up CT scan was conducted at Defendants. The CT scan findings described a right upper lobe cavitary mass.

24. A biopsy conducted of the right upper lobe mass performed on June 5, 2014 resulted in a diagnosis of squamous cell carcinoma.

25. Based on these tests, Mr. Woodard was assigned a clinical stage IIIA, T2a, N2, M0 squamous cell carcinoma of the lung.

26. On October 3, 2015, Mr. Woodard passed away.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT UNITED STATES OF AMERICA, DEFENDANT UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, AND DEFENDANT ALBANY STRATTON VETERANS AFFAIRS MEDICAL CENTER IN MEDICAL MALPRACTICE.

27. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 26 of this Complaint as set forth at length herein.

28. At all times mentioned herein, Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center held themselves out to Decedent Nickie F. Woodard and other eligible beneficiaries as a provider of high quality health care services, with the expertise necessary to maintain the health and safety of patients such as Decedent Nickie F. Woodard.

29. For some time prior to November 4, 2013, Decedent Nickie F. Woodard had been under the medical care and treatment of Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center for evaluation, medical care, and treatment.

30. In 2013, Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center did undertake to render proper and immediate treatment and care to Decedent Nickie

6

F. Woodard and therefore had a duty to use reasonable care, skill, and judgment in diagnosing and treating the pathologies, diseases, complications, conditions, signs, symptoms, and/or complaints from Decedent Nickie F. Woodard was then and there suffering.

31. Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center deviated from the standard of care and thereby breached their duty owed to Decedent Nickie F. Woodard.

32. Beginning on November 4, 2013 and continuing thereafter, the medical care, treatment, and diagnosis rendered to Decedent Nickie F. Woodard by Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center was not in accordance with good and accepted medical practice.

33. On November 4, 2013 and continuing thereafter, the medical care, treatment, and/or diagnoses rendered to Decedent Nickie F. Woodard by Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center deviated from the standard of care in the medical profession and was not in accordance with good and acceptable medical practice, procedure, techniques, and usages.

34. On November 4, 2013 and continuing thereafter, Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany

Stratton Veterans Affairs Medical Center failed to properly diagnose and treat the pathologies, diseases, complications, conditions, signs, symptoms, and/or complaints of Decedent Nickie F. Woodard.

35. The medical malpractice of the Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center, without intent to limit, includes the following:

a. failure to timely advise Mr. Woodard of the results from his November 4, 2013 x-ray;

b. failure to timely advise other health care providers providing care to Mr. Woodard of the results from his November 4, 2013 x-ray;

c. failure to timely communicate with Mr. Woodard about his condition;

d. failure to timely communicate with other health care providers providing care to Mr. Woodard;

e. failure to timely appreciate and act upon the signs and symptoms presented by claimant;

f. failure to properly read and report imaging studies and findings;

g. failure to timely review medical records including but not limited to the imaging studies of Mr. Woodard;

h. failure to review pertinent medical images;

i. failure to confirm pertinent medical images;

j. failure to fully evaluate Mr. Woodard prior to clearing him for surgery

8

on November 4, 2013;

k. failure to properly interpret diagnostic tests, examinations, and procedures during the care and treatment of Mr. Woodard;

l. failure to diagnose, acknowledge, indicate, relay and investigate the lung mass;

m. failure to treat Mr. Woodard's lung mass;

n. failure to timely seek specialist consultants;

o. failure to obtain an oncology consult;

p. failure to obtain a surgical consult;

q. failure to notify Dr. James Parkinson;

r. failure to facilitate, direct and/or ensure appropriate and proper communications with Mr. Woodard's primary care physician regarding the findings on the x-ray;

s. failure to facilitate, direct and/or ensure appropriate and proper communications with the attending physician regarding the findings of the x-ray;

t. failure to effectively and efficiently notify Mr. Woodard of the findings of the x-ray on November 4, 2013;

u. failure to seek consultations from indicated specialists and failed to do so timely;

v. failure to consider or appreciate the gravity and emergent nature of the

9

signs, symptoms, complaints and/or conditions with which Mr. Woodard presented;

w. failure to handle Mr. Woodard's case with sufficient urgency;

x. failure to order and/or request indicated tests and procedures;

y. failure to order and/or request indicated tests and procedures "stat";

z. failure to perform requested and/or ordered tests and procedures;

aa. failure to properly and adequately monitor Mr. Woodard;

bb. failure to diagnose and treat the conditions with which Mr. Woodard presented;

cc. failure to timely diagnose and treat the conditions with which the Mr. Woodard presented;

dd. failure to timely observe and/or note signs and symptoms of Mr. Woodard;

ee. failure to carry out requested orders;

ff. failure to observe, appreciate and act timely upon developing signs and symptoms of Mr. Woodard;

gg. failure to develop a differential diagnosis;

hh. failure to formulate a differential diagnosis;

ii. failure to create a plan of care and for work-up of Mr. Woodard;

jj. failure to follow-up on any plan of care and work-up of Mr. Woodard;

kk. failure to formulate a differential diagnosis and embark on ruling out

differential diagnoses;

ll. failure to order or perform indicated tests and procedures;

mm. failure to timely order and perform indicated tests and procedures;

nn. failure to order and perform indicated tests and procedures on an urgent basis;

oo. failure to appreciate the significance of test results;

pp. failure to review and appreciate the significance of notes and consultations recorded in Mr. Woodard's chart by other physicians;

qq. failure to timely, sufficiently frequently and/or consistently consult with other physicians providing care and treatment to Mr. Woodard;

rr. failure to timely, sufficiently frequently and/or consistently discuss with other physicians providing care and treatment to Mr. Woodard the possible etiologies for his signs, symptoms and/or complaints;

ss. failure to timely perform research regarding possible etiologies for Mr. Woodard's signs, symptoms and/or complaints;

tt. failure to timely, sufficiently frequently and/or consistently perform research regarding the possible etiologies for Mr. Woodard's signs, symptoms and/or complaints;

uu. failure to keep Mr. Woodard informed of the his evolving medical care;

vv. failure to timely perform surgery;

ww. failure to timely perform surgical exploration;

xx. failure to act with an appropriate urgency;

yy. failure to have a consistent plan of care or for Mr. Woodard;

zz. failure to have meaningful consultation and conversations between attending physicians treating Mr. Woodard;

aaa. failure to have meaningful consultation and conversations between attending physicians in different specialties treating Mr. Woodard;

bbb. failure to have meaningful consultation and conversations between attending physicians and resident physicians in different specialties treating Mr. Woodard;

ccc. failure to have meaningful consultation and conversations between physicians and nursing personnel providing care to Mr. Woodard;

ddd. failure to order/timely order chest imaging of Mr. Woodard;

eee. failure to timely obtain imaging films of the entire chest of Mr. Woodard;

fff. failure to perform timely follow up imaging studies of Mr. Woodard's chest;

ggg. failure to possess, hire, retain, provide or otherwise employ safe adequate medical staff and personnel;

hhh. failure to maintain appropriate, efficient, and effective policies and procedures with regard to diagnostic findings;

      iii.     failure to appropriately and adequately supervise staff;

      jjj.     failure to use reasonable care in the exercise of their skill and application of their learning;

      kkk.    and was otherwise careless, reckless and negligent under the circumstances.

36.    Pursuant to the doctrine of *respondeat superior*, in addition to active and direct medical malpractice on the part of Defendants, as herein alleged, Decedent Nickie F. Woodard will claim that Defendants are vicariously liable for the medical malpractice of its directors, officers, operators, administrators, employees, agents, staff, and/or servants.

37.    Upon information and belief, the medical care, treatment, and/or diagnoses rendered to Decedent Nickie F. Woodard by Defendant United States of America violated the rules and regulations of the United States Department of Health and Human Services.

38.    Upon information and belief, the medical care, treatment, and/or diagnoses rendered to Decedent Nickie F. Woodard by Defendant United States Department of Veterans Affairs violated the rules and regulations of the United States Department of Health and Human Services.

39.    Upon information and belief, the medical care, treatment, and/or diagnoses rendered to Decedent Nickie F. Woodard by Defendant Albany Stratton Veterans Affairs Medical Center violated the rules and regulations of the United States Department of Health and Human Services.

40.    Upon information and belief, the medical care, treatment, and/or diagnoses

rendered to Decedent Nickie F. Woodard by Defendant United States of America violated the rules and regulations of the United States Department of Veterans Affairs.

41. Upon information and belief, the medical care, treatment, and/or diagnoses rendered to Decedent Nickie F. Woodard by Defendant United States Department of Veterans Affairs violated the rules and regulations of the United States Department of Veterans Affairs.

42. Upon information and belief, the medical care, treatment, and/or diagnoses rendered to Decedent Nickie F. Woodard by Defendant Albany Stratton Veterans Affairs Medical Center violated the rules and regulations of the United States Department of Veterans Affairs.

43. The aforementioned medical malpractice was caused solely by Defendants without any negligence on the part of Plaintiffs contributing thereto.

44. That as a sole, direct, and proximate cause of the foregoing medical malpractice by Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center, Plaintiff Decedent Nickie F. Woodard sustained serious and permanent personal injuries which required medical care, aid, attention, treatment, and special services.

45. That as a sole, direct, and proximate cause of the foregoing medical malpractice by Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center, Decedent Nickie F. Woodard has suffered anguish, pain and suffering, disability, emotional

injury, impaired ability to be employed, loss of earnings, and damages.

46. That as a sole, direct, and proximate cause of the foregoing medical malpractice by Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center, Decedent Nickie F. Woodard suffered loss of enjoyment of life, loss of quality of life, and incurred the injuries and damages that normally follow such occurrence as set forth in this complaint.

47. That as a sole, direct, and proximate cause of the foregoing medical malpractice by Defendant United States of America, Defendant United States Department of Veterans Affairs, and/or Defendant Albany Stratton Veterans Affairs Medical Center, Decedent Nickie F. Woodard was required to undergo significant medical therapies, surgeries, and treatments, and has incurred damages for the associated cost of said therapy, surgery, and treatment.

48. That as a sole, direct, and proximate cause of the foregoing, Plaintiffs were damaged and seek compensatory damages in the amount of $10,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

49. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 48 of this Complaint as if set forth at length herein.

50. On October 3, 2015, decedent Nickie Woodard died as a direct and proximate result of the defendants' negligence and carelessness, as described above herein.

51. That this action is brought pursuant to EPTL § 5-4.1 through 5-4.4.

15

52. That decedent Nickie Woodard is survived by his wife, Crystal Woodard, daughter Amy Jo Durbin and son Nicholas Rex Woodard.

53. As a direct and proximate result of the defendants' negligence, the distributes of Nickie Woodard's estate have sustained loss of financial support, services, familial support and other damages in an amount to be determined at trial.

54. As a direct and proximate result of defendants' negligence, as described herein, Nickie Woodard was harmed, including permanent and debilitating injuries and ultimately death.

55. These injuries caused Nickie Woodard extensive conscious pain, conscious suffering, severe emotional distress, and substantially reduced his ability to enjoy life.

56. As a direct and proximate result of said defendants' negligence, as described herein, Nickie Woodard was injured in health strength, and activity and suffered physical injures as well as mental anguish from the time of on or about November 4, 2013 through and including his death on October 3, 2015, all to Nickie Woodard's general damage. In addition, Nickie Woodard was rendered sick, sore lame, and disabled, both internally and externally, ultimately resulting in his death. All of said injuries caused Nickie Woodard intense anxiety, distress, fear, conscious suffering, and distress during his life, secondary to the physical injury and damages.

57. Also as a further and proximate result of the defendants' negligence, the Estate of Nickie Woodard has incurred financial obligations for the costs of the emergency medical care and treatment rendered to him before his death and the distributees of Nickie

16

Woodard's estate, have sustained the wrongful death of husband and father, and have sustained medical and funeral and burial expenses arising therefrom, as well as the other damages as determined at the time of trial.

58.    By reason of the foregoing, plaintiffs have suffered damages for the wrongful death of their husband and father, Nickie Woodard, and have also sustained damages for his conscious pain and suffering, both in a sum of money having a present value of $8,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

59.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 58 of this Complaint as if set forth at length herein.

60.    At all times mentioned herein, Plaintiff Crystal Woodard was married to Decedent Nickie F. Woodard and they resided as husband and wife in the County of Warren, State of New York.

61.    Plaintiff Crystal Woodard is therefore entitled to the services, society, companionship, and consortium of Decedent Nickie F. Woodard.

62.    Upon information and belief, as a result of the medical malpractice of Defendants, Plaintiff Crystal Woodard was deprived and will continue to be deprived of the services, society, companionship, and consortium of Decedent Nickie F. Woodard.

63.    Upon information and belief, the within damages suffered by Plaintiff Crystal Woodard were caused solely by the medical malpractice of Defendants, without any negligence on the part of Plaintiffs contributing thereto.

64.     That as a sole, direct, and proximate cause of the foregoing, Plaintiffs were damaged and seek compensatory damages in the amount of $2,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, CRYSTAL J. WOODARD, Individually, and as the Executrix of the Estate of NICKIE F. WOODARD, (Deceased), do hereby pray that judgment be entered in their favor and against the Defendants, jointly and severally, on their First and Second Causes of Action, as follows:

1)     For compensatory damages in the amount of $10,000,000.00 in connection with Plaintiffs' First Cause of Action;

2)     For compensatory damages in the amount of $8,000,000.00 in connection with Plaintiffs' Second Cause of Action;

3)     For compensatory damages in the amount of $2,000,000.00 in connection with Plaintiffs' Third Cause of Action;

4)     Costs and attorneys fees incurred in this civil action, together with such further and additional relief at law or in equity that this Court may deem proper.

**THE PLAINTIFFS' HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated: October 2, 2017

                        CONWAY & KIRBY, PLLC

By: _____
Elizabeth A. Graziane, Esq.
Bar Roll No.: 301030
*Attorneys for Plaintiffs*
*Crystal J. Woodard, Individually and as the*
*Executrix of the Estate of Nickie F. Woodard*
413 Kenwood Avenue
Delmar, New York 12054
(518) 533-1057
eag@cklawyers.com